# Murphy *v.* Murphy, Appellant.

*Evidence—Competency of witness—Party dead—Joint contract—Act of May* 23, 1887, *P. L.* 158, *sec.* 5, *clause e—Decedent's estates.*

Where four sons in their mother's lifetime execute to her a life lease of real estate, and it is claimed that there was a parol contemporaneous joint contract by which the mother was to execute a will by which she was to give to the sons each a one-fourth interest in the estate of which she should die seized, and after the mother's death a suit was brought by one of the sons against the mother's executor for breach of the alleged oral agreement, the other three sons who had also brought separate suits against the executor for the same breach, are not competent witnesses to establish the alleged oral agreement.

In the above case testimony by an attorney at law that the parol agreement at the time the life lease was executed was that the property would descend to and become vested in the heirs of the decedent's deceased husband, and that some papers which the witness thought a will, was made contemporaneously with the lease, is not sufficient to sustain a statement in the charge, that the attorney had testified that the decedent had agreed to make a will in favor of her four sons, there being another son in addition to the four named.

Argued Jan. 18, 1904. Appeal, No. 74, Jan. T., 1904, by defendant, from judgment of C. P. Susquehanna Co., April T., 1901, No. 35, on verdict for plaintiff in case of Charles A. Murphy v. Frederick Murphy, Executor of Harriet Agnew, Deceased. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Assumpsit for breach of contract. Before SEARLE, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $250. Defendant appealed.

*Errors assigned* are quoted in the opinion of the Superior Court.

*T. J. Davies* and *R. J. Manning*, for appellant.—A person who depends upon plaintiff securing a verdict in order to collect his debt, is such an interested party as makes him an incompetent witness on account of interest: Seitzinger v. Ridgway, 4 W. & S. 472; Burgess v. Burgess, 109 Pa. 312; Mohan v. Butler, 112 Pa. 590.

*J. D. Miller*, of *Miller & Axtell*, with him *McCollum & Smith*, for appellee.—Robert Murphy had no interest that the judgment in this case would operate upon. By it he could neither acquire nor lose a right nor incur a responsibility: Dickson et ux. v. McGraw, 151 Pa. 98.

OPINION BY MORRISON, J., April 18, 1904:

In this action of assumpsit there was a verdict and judgment thereon in favor of the plaintiff, and the defendant appealed and has filed in this court eighteen assignments of error. A careful examination of the testimony and pleadings leads us to the conclusion that the case was not properly tried and the judgment cannot be sustained. It is not our purpose to discuss all of the assignments of error as we think consideration of the first, second, fourth and sixth assignments will be sufficient.

Robert Murphy, Sr., died intestate in 1865 leaving to survive him a widow, Harriet (who married William Agnew in 1885), and five sons born to him by said Harriet, viz: Daniel, Frederick,

Robert, Charles and George. Robert Murphy, Sr., owned, at the date of his death, a small house and lot in the borough of Susquehanna, which descended to his children, subject to the interest of his widow therein. After the death of the widow this property was sold and the proceeds equally divided among the four sons of Robert, Sr., and Harriet, viz: Daniel, Frederick, Robert and Charles.

Harriet died testate leaving all of her property to her son Frederick. On August 28, 1897, Harriet made a will granting all of her property to Charles Murphy. This will was intended to revoke the will alleged to have been made to Charles and his three brothers at the date of the making of the life lease to Harriet Agnew in 1885. After his mother's death Charles presented this will and claimed under it till he learned of the later will to his brother Frederick, which revoked the one to him.

On October 26, 1885, a joint agreement in writing was made between Daniel, Frederick, Robert and Charles Murphy of the one part and their mother, Harriet Agnew, of the other part. This agreement was a life lease of the house and lot, of which their father died seized, to their mother, which was in evidence at the trial and is marked in the record Exhibit A, No. 2. It reads in part: " This agreement made the 26th day of October, A. D. 1885, by and between Daniel Murphy, Frederick Murphy, Robert Murphy and Charles Murphy, heirs of Robert Murphy, late of Susquehanna Depot, Pa., deceased, of the one part, and Harriet Agnew of the same place of the other part. The consideration named therein is natural affection and the annual rent of one dollar, and it leases and lets the premises described therein to Harriet Agnew for the term of her natural life.

Mrs. Agnew purchased from her son, George Murphy, his interest in the estate left by his father by deed dated the 15th day of January, 1886, which was duly executed and delivered and was in evidence at the trial of this suit. This deed was an ordinary deed of conveyance of real estate except the following : " Between George W. Murphy and Clara R., his wife, of the Township of Windsor, Broome County, New York, parties of the first part, and Harriet Agnew, for life, remainder to the heirs of the said Harriet Agnew in fee simple of the borough of Susquehanna Depot, Pa., of the second part."

The plaintiff's declaration among other things averred: " In consideration of the execution and delivery by plaintiff of said indenture (referring to Exhibit A above referred to), and the valuable rights therein conveyed to the said Harriet Agnew, she, the said Harriet Agnew, then and there agreed to keep the buildings on said premises in repair, that she would pay all taxes thereon, that she would keep the buildings on said premises insured, that she would commit no waste, and further, that she would execute a last will and testament bequeathing and devising to plaintiff one fourth of all the estate, real, personal and mixed, of which she, the said Harriet Agnew, should be the owner at the time of her decease, subject, however, to a life estate therein of William Agnew, her husband, and that such will should not be revoked by her, but at and upon her decease should be in proper form for probate, so that plaintiff would receive one fourth of the entire estate of said decedent."

Then follows an averment that the indenture, meaning the life lease, was executed by plaintiff and his co-owners, and was delivered to said Harriet Agnew, and in pursuance and by virtue thereof she entered upon and continued in possession and occupancy of said premises from the 26th day of October, 1885, until the time of her death on August 16, 1900, during all of which time she had and enjoyed the use, rents and profits of said premises.

It is next averred that on or about the time of the execution of the said agreement, Harriet Agnew executed a will and testament devising and bequeathing to plaintiff one fourth of all her estate, real, personal and mixed, subject to a life estate of her said husband; but before her death she revoked such will by the execution of another, in which she bequeathed her entire estate, real, personal and mixed, to Frederick Murphy, which said last will has been duly probated in the register's office of Susquehanna county.

This suit was brought against the personal representative of Harriet Agnew to recover damages for the alleged breach of her oral contract to make a will and leave the same unrevoked at the time of her death, vesting in the plaintiff the one fourth of all the estate, real, personal and mixed, of which the said Harriet Agnew died seized.

In this connection it should be noted that on February 7,

1901, when Charles Murphy brought this action Robert and Daniel Murphy each brought a similar action and filed in each case a declaration like the one filed in the case brought by Charles.

It should also be noted at this point that while Charles Murphy's declaration in this suit complains that his mother, Harriet Agnew, made a will in favor of her son, Frederick Murphy, which revoked the one which he alleges was made cotemporaneously with the life lease, nothing · is said in the declaration about a will which Harriet Agnew made to Charles revoking the will made cotemporaneously with the life lease, nor is the fact alluded to that Charles presented this will in his favor and claimed under it until it was discovered that his mother had made a later will to Frederick, revoking the one to Charles. Here we find Charles complaining as a ground for his recovery that his mother made a will to Frederick revoking the one which he avers was made in August, 1885, to himself and three of his brothers, but he is careful not to allege or aver that he procured his mother to make a will to himself after August, 1885, and before she made the will to Frederick, which revoked the will of 1885, if one was made.

The first assignment of error is as follows : " The court erred in overruling the defendant's objection and permitting the plaintiff to call Robert Murphy as a competent witness to testify to matters occurring in the lifetime of Harriet Agnew, deceased, under the following objection and ruling, to-wit: Robert Murphy sworn on behalf of the plaintiff. Mr. Miller: We offer to prove by the witness on the stand that his father, Robert Murphy, died about the year 1865, in the possession of a house and lot situate on the corner of Jackson and cross streets, in the borough of Susquehanna Depot, in this county. That his father left to survive him a widow, Harriet Murphy, who subsequently intermarried with William Agnew ; that his father also left surviving him five sons—the witness, Robert Murphy ; George Murphy, Daniel. D. Murphy, Frederick A. Murphy and Charles A. Murphy. That Mrs. Murphy, the mother of the witness, and the widow of the elder Robert Murphy, remained in possession of said premises until about 1885, when she entered into a contract with Charles A. Murphy, the legal plaintiff in this case, under which

Charles A. Murphy conveyed to the said Harriet Agnew an estate for life in his interest in said premises, in consideration of which the said Harriet Agnew agreed that she would by will at her death give to Charles Murphy one fourth of all the property which she was the owner of at the time of her decease, and that under this agreement Mrs. Agnew remained in possession of the premises until her death in the year 1900. Mr. Davies : We object to this offer: 1. To all that occurred during the lifetime of Harriet Agnew, the deceased, as the witness on the stand is an heir and interested in the subject-matter of this suit. 2. That he is a party to the contract referred to in the offer, and is also a party to another suit predicated upon the same contract, against the same defendant, for his share, claiming to be the same as the plaintiff in the present case. . . . Mr. Davies : We desire at this point to examine this witness as to his interest in the subject-matter in controversy, for the purpose of affecting his competency as a witness in this case. The Court : You may proceed to argue the offer and objections, assuming for the present that the facts stated in your objection are true. Mr. Davies : We also further object that the witness is a party to the same contract, it being a joint contract between the witness, Robert Murphy, Charles A. Murphy, Frederick Murphy and Daniel D. Murphy, with Harriet Agnew, deceased, the defendant in this case. The Court : Under the offer we think the witness is competent, the offer being to show a separate and distinct contract between the legal plaintiff in the case alone and the decedent, independent of the other children.

"Objection overruled, defendant excepts, bill sealed for defendant."

The pith of the objection was that the witness was a party to the same contract, it being a joint contract between the witness, Robert Murphy, Charles A. Murphy, Frederick Murphy and Daniel D. Murphy with Harriet Agnew, deceased, the other party to the contract. The defendant's counsel offered to examine this witness as to his interest in the subject-matter in controversy, for the purpose of affecting his competency as a witness in the case. The learned court replied : "You may proceed to argue the offer and objection, assuming for the present that the facts stated in your objection are true."

The court then at once ruled the witness competent and admitted the testimony. We think upon the condition of the record as it then stood it ought to be assumed that the defendant's counsel could have proved that the witness was interested in the subject-matter in controversy, and the other party to the thing or contract in action being dead, and her right thereto or therein having passed, by act of law, to a party on the record, who represented her interest in the subject-matter in controversy, the surviving or remaining party to such thing or contract, or any other person whose interest was adverse to the said right of such deceased party, was not a competent witness to any matter occurring before the death of said party. See clause *e* of sec. 5, Act of of May 23, 1887, P. L. 158.

While the plaintiff's declaration averred a contract with Charles Murphy by Harriet Agnew to make a will, and while the plaintiff adroitly sought to prove that there was a separate contract with each of the four sons of Harriet, yet it is apparent from the whole testimony in the case that the life lease to Harriet was a joint lease made by her four sons, and that if she agreed to make a will it was a joint agreement made at the same time and place with these four sons.

The life lease of October 26, 1885, in evidence, was between Daniel Murphy, Robert Murphy, Frederick Murphy and Charles Murphy of the one part and Harriet Agnew of the other part. Now, in making the ruling complained of, the court conceded the fact that if any agreement was made by Harriet Agnew in regard to the making of a will, it was with her four sons, who joined in this contract, and it would seem that they were all interested in sustaining such contract, and that their mouths would be closed as witnesses under the very words of clause *e*, act of 1887, supra.

We think this assignment must be sustained for the reason, the court prevented the defendant's counsel from introducing the evidence to show this state of affairs, and when the court assumed the facts stated in the objection of the defendant's counsel to be true and then admitted the evidence, we think it was error.

The second assignment of error is in substance the same as the first, and what has been said will sustain it.

The fourth assignment is as follows : " On the part of the

defense the only direct evidence given in contradiction of this contract as sworn to by these witnesses, who were present, Mrs. Storer and Robert Murphy, is the testimony of the attorney, M. M. Riley, who testifies that the contract was, as I have stated before, as having been given in evidence by the defendant. He testifies that the consideration for the conveyance to Mrs. Agnew was not that expressed in it, but that the consideration was different from that expressed in it; that the one was merely nominal and the other was a parol contract, and he testifies that his recollection of that parol contract was that Mrs. Agnew was to will these four sons all the property she had derived from her husband or that came through her husband, and he also testifies that there was at the same time a will made and executed by Mrs. Agnew in conformity therewith, if I remember rightly."

Sixth assignment: " The court erred in that part of their charge contained in brackets, which is as follows : If you find that the contract was not as claimed on the part of the plaintiff, but was as claimed on the part of the defendant, or as testified to by Mr. Riley, even then, she not having made a will conveying to these four sons her interest in the property which came from the father, there would be a breach of the contract, even if you should find it as testified to by Mr. Riley, and Charles would be entitled to recover in this suit such damages as he has sustained by reason of the breach of that contract. So that really the question is, was there a parol contract, or was there not? If there was not, the defendant is entitled to a verdict. If there was, the plaintiff is entitled to recover, under the instructions we have given you, such damages as you will find.

The testimony of M. M. Riley, referred to by the court, was a written deposition, which was in evidence and before the court. An inspection of it forces us to the conclusion that the learned court inadvertently misstated to the jury the testimony of Mr. Riley to such an extent that it may have controlled the verdict. Mr. Riley testified: " The actual consideration was an agreement or understanding made cotemporaneously with Exhibit A, that after the death of Harriet Agnew, the property belonging to Robert Murphy and acquired by him in his lifetime, or that was acquired through

his efforts, should, at the death of Harriet Agnew, descend equally to Daniel, Frederick, Robert and Charles Murphy, the children and heirs at law of Robert Murphy, deceased." Again Mr. Riley said : " The heirs of Robert Murphy, deceased, including the defendant, Frederick Murphy, objected to Mr. Agnew by reason of the marriage claiming any interest as tenant by the courtesy or otherwise in the property of Robert Murphy, deceased, whether held in his own name or that of his wife, and claimed that upon her death all the property that had been acquired either by herself or Robert Murphy during his lifetime and by his labor or efforts, should descend to the heirs of her former husband, Robert Murphy, share and share alike, instead of to her then husband.    Both Harriet Agnew and her husband conceded the justice of this claim of the Murphy heirs, and it was arranged and agreed that a life lease should be given her of the homestead, which is the property described in exhibit A, and that in consideration of said lease, all the property of Mrs. Agnew that was derived by her from or through her husband, Robert Murphy, in his lifetime, should descend to the heirs of the latter upon her death.    My recollection is that some paper, I think a will, was made cotemporaneously with the lease, Exhibit A, and executed by Mrs. Agnew, through and by which all the property of her former husband, Robert Murphy, including that held by her personally, was willed to the children of Robert Murphy, share and share alike.    When this matter was first brought to my attention, I was of the opinion that all the real estate was held by Mrs. Agnew, formerly Mrs. Murphy, in her own name, but it appears that this was not the fact, and that the lease only included the property to which title was held by Robert Murphy at the time of his death.    The actual consideration of Exhibit A was an agreement upon the part of Mrs. Agnew that all the property derived from or through her former husband, Robert Murphy, should, upon her death, descend to and become vested in the heirs of the said Robert Murphy, share and share alike."

We have quoted all of Mr. Riley's testimony referring to the consideration of Exhibit A, the life lease, and it will be seen at a glance that it very materially differs from the version of it given to the jury by the court in the general charge.    The learned court told the jury that Mr. Riley's recollection of the

parol contract was that Mrs. Agnew was to will these four sons all of the property she had derived from her husband, etc. This is not in accordance with Mr. Riley's testimony, and it may have misled the jury. We think the learned court committed serious error in saying to the jury, " If you find that the contract was not as claimed on the part of the plaintiff, but was as claimed on the part of the defendant, or as testified to by Mr. Riley, even then, she not having made a will conveying to these four sons her interest in the property which came from the father, there would be a breach of the contract —even if you should find it as testified to by Mr. Riley—and Charles would be entitled to recover in this suit such damages as he has sustained by reason of the breach of that contract."

Now, the theory upon which the plaintiff sought to recover was the consideration of the life lease to Mrs. Agnew, being her agreement to make a will assuring the one fourth of the property to him. The learned court plainly told the jury that Mr. Riley's testimony was to this effect, but his testimony does not bear this construction. He says the parol agreement at the time the life lease was executed was that the property would descend to and become vested in the heirs of the said Robert Murphy, share and share alike. We consider it misleading for the court to instruct the jury that Mr. Riley's testimony supported the contract set up by the plaintiff. The plaintiff contended that his mother made a contract with him to make a will and not revoke it, granting to him the one fourth of the property. Mr. Riley's testimony is clearly to the effect that the property was to descend to and become vested in the heirs of the said Robert Murphy, share and share alike, and there were five of these heirs. Therefore, Mr. Riley's testimony did not support the contract averred by the plaintiff. Mr. Riley's testimony was to the effect that if a will was made cotemporaneously with the life lease, it willed the property to the children of Robert Murphy, share and share alike, and this includes the five.

This witness was a lawyer and it is to be presumed when he speaks about property descending to and becoming vested in the heirs of Robert Murphy, he did not mean the making of a will. Property descends to the heirs by operation of law, and this is quite different from title passing by will.

There was manifest error in the court saying to the jury: "Even if you should find it as testified to by Mr. Riley, Charles would be entitled to recover in this suit such damages as he has sustained by reason of the breach of that contract. So that really the question is, was there a parol contract, or was there not? If there was not, the defendant is entitled to a verdict. If there was, the plaintiff is entitled to recover, under the instructions we have given you, such damages as you will find." There might have been such a parol contract as was testified to by Riley, and yet the plaintiff not entitled to recover thereon under the pleadings in this case. Under Riley's testimony the jury might have found that the whole parol contract really was that the property would descend to the heirs of Robert Murphy, Sr., under the law. The jury might have reached the conclusion that in reality no contract was made, but that the fact was stated and agreed upon that under the law the property would descend to the children of Robert Murphy, Sr.

We do not think the testimony fairly supported the plaintiff's claim that his mother made a parol contract with him that she would will him one fourth of all the property of which she died seized. On the contrary we think the testimony fairly considered shows that the four boys made the life lease to their mother in 1885, and if any oral contract was made in regard to a will it was made at the same time with these four boys, and it was to be a will in their favor for all of the property of which she died seized. Therefore, we do not think the ingenious pleading and offer of testimony to show a personal contract between Charles and his mother in regard to the will will permit the other three interested parties to testify in support of the plaintiff's claim.

The first, second, fourth and sixth assignments of error are sustained and the judgment is reversed with a v. f. d. n.

The remaining assignments are not sustained.

RICE, P. J., BEAVER and SMITH, JJ., dissented.